[S. F. No. 8776.   Department Two.—January 29, 1919.]

In the Matter of the Estate of ISAAC J. ROSS, also Known as I. J. ROSS, Deceased.   T. F. ROSS et al., Appellants, v. B. F. VAN DYKE, Executor, etc., et al., Respondents.

APPEAL — VERDICT UPON CONFLICTING TESTIMONY — REVERSAL OF JUDGMENT.—A judgment based upon a verdict found upon sharply conflicting testimony will not be reversed on appeal in the absence of a finding of substantial error of law in the trial.

EVIDENCE—FALSE TESTIMONY—RIGHT OF JURY TO DISREGARD—INSTRUCTIONS.—The giving or refusing to give an instruction relating to the right of the jury to disregard the whole of the testimony of a witness who may have willfully testified falsely regarding any material fact does not constitute prejudicial error unless injury is shown.

ID.—WILL CONTEST—MENTAL UNSOUNDNESS—DISREGARD OF TESTIMONY OF FALSE WITNESS—ERRONEOUS REFUSAL TO GIVE INSTRUCTION.— In this contest of a will based upon the mental unsoundness of the testator, in view of the fact that the testimony regarding the capacity or incapacity of the testator was, for the most part, that of intimate acquaintances and relatives who radically differed upon the question, and in view of the testimony of the nurse who attended the testator in his last illness to the effect that she believed him to be of sound and disposing mind, the refusal to instruct the jury as to its right to disregard the whole of the testimony of a witness who may have willfully testified falsely regarding any material fact was prejudicial error.

ID.—PROOF OF MENTAL UNSOUNDNESS —INSTRUCTION.—An instruction that the law requires that the person upon whom the burden of proving insanity rests, shall prove it by a preponderance of evidence, and that by preponderance is meant that amount of evidence which produces conviction in an unprejudiced mind, and only such evidence will justify a verdict of unsoundness, is prejudicial error.

ID.—PREPONDERANCE OF EVIDENCE — ERRONEOUS INSTRUCTION — REQUESTED INSTRUCTIONS—FALSE DEFINITION NOT ADOPTED.—A requested instruction to the effect that if the jurors are "satisfied" that the testator was not of disposing mind when the will was executed their verdict must be for the contestants, and the use in other instructions offered of the expressions "believed and are satisfied, from and by the evidence," and "believe from the preponderance of the evidence," do not amount to a concurrence in an erroneous instruction defining preponderance of evidence to be that amount of evidence which produces conviction in an unprejudiced mind.

APPEAL from a judgment of the Superior Court of Alameda County. Wm. S. Wells, Judge. Reversed.

The facts are stated in the opinion of the court.

Mastick & Partridge, H. F. Chadbourne, and J. W. Dignan, for Appellants.

Driver & Driver and John L. McNab, for Respondents.

MELVIN, J.—This is an appeal from a judgment of court upon verdict of a jury in favor of proponents in a contest of the will of Isaac J. Ross, deceased.

There was a former appeal, in which this court reversed a judgment entered after the sustaining of a motion for nonsuit. (*Estate of Ross,* 173 Cal. 178, [159 Pac. 603].) At the second trial the contestants introduced virtually the same testimony as that produced upon the previous hearing, and, as a summary thereof was given by Mr. Justice Henshaw in the opinion which appears in the one hundred seventy-third volume of the California Reports, we refer to that opinion as containing a fair statement of the essential matters regarding which testimony was given for the contestants.

This testimony was opposed at the second trial by that of witnesses who stated their belief that Mr. Ross was of sound and disposing mind at the time of the testamentary act. Some of these witnesses were old friends who had known Mr. Ross long and intimately. Some of them visited him frequently during his last illness, and they testified that his mind was unusually bright and vigorous for one of his age, in spite of his great physical weakness. One witness was a nurse (not the one mentioned in the opinion on the former appeal), who gave it as her unqualified belief that before and at the time of the preparation and execution of the will her patient was of sound and disposing mind. Upon cross-examination, this witness (Mrs. Shinn) was asked about a written statement produced by counsel for contestants and purporting to have her signature at the end thereof. While admitting that she had signed a statement, she refused to admit without reservation that the name written on the document exhibited was her own, because, as she said, some of the letters did not look like her writing. She also expressed the

belief that the statement shown to her in court contained more pages than the one to which her signature had been appended. Counsel who prepared the statement from Mrs. Shinn's dictation testified that the document offered by him was the very statement signed by the nurse. The last sentence of that writing, appearing just above the date and purported signature, was as follows: "I do not believe that his mind was clear at all times and he had spells when I do not think his mind was clear." In an admittedly genuine letter written after the death of Mr. Ross, Mrs. Shinn (writing of her grandmother whom she was then nursing) used the following expression: "Here is another such a case as Mr Ross only he seemed to have his right mind part of the time and grandmother is entirely void of reason which makes her case a great care." In explanation of this statement, she testified: "When I made reference in the letter that I wrote to Mr. Dignan to Mr. Ross not being right I thought Mr. Ross was in his right mind up to the last few days; I considered him of sound mind. The last two or three days he was kept under opiates. It was that time to which I alluded." She also testified as follows: "There was never any time there when I thought that his mind wandered at all, either night or day. I have never for an instant either during the time that I was attending him or since his death doubted at all the soundness of Mr. Ross's mind. I never expressed in conversation with anybody any doubt as to the soundness or unsoundness of Mr. Ross's mind. I often remarked how remarkable it was, how strong his mind was."

The testimony regarding the preparation of the will was given by Mrs. Shinn and by Mr. Van Dyke. From this it appears, in substance, that the testator, of his own motion, asked the nurse to send for Mr. Van Dyke, an attorney at law, who was a kinsman of Mr. Ross. She telephoned to Sacramento and left a message for the lawyer, and, in due course, in response to it, he came to San Leandro and to the home of the sick man. Mr. Ross indicated his wishes to the attorney and told the nurse where to find certain of his notes, bonds, and other documents. On the first day the patient became very weary with the work of indicating his wishes to his counsel and it became necessary to postpone further preparation of the testament until the next day, when the work was resumed. Testator did not express his wishes with reference

to all of his property, nor did he desire the will to contain a residuary provision, but he stated his willingness to have that part of his estate not described in the will distributed according to statute, in the event that he should not dispose of it by codicil.

From the foregoing, it will appear that the jury reached its verdict after considering sharply conflicting testimony, and a judgment based upon such a verdict will not be reversed unless we find substantial error of law in the trial. Numerous alleged errors are called to our attention, but we need consider only two, both relating to instructions. The court gave many instructions based upon decisions of this court in matters like the present, and these were in the main correct, although appellants assert that too great emphasis was devoted to the matter of the supposed inviolability of a will unless the incapacity of the testator should be well established.

One of the instructions offered by contestants was the usual one relating to a witness who may have willfully testified falsely regarding any material fact and the jury's right to disregard the whole of the testimony of such a witness. This was refused, according to a note made upon it by the presiding judge, because the giving of it would be a repetition; yet the record does not disclose the giving of the same instruction, substantially or otherwise, at any place in the charge. This, appellants assert, in view of the contradictions in the testimony of Mrs. Shinn, was most serious error. Our attention is called to an unsuccessful effort made by proponents to show by suggested diminution of the record that the instruction or a similar one was given. Of course, we are bound by the record and must hold that the omission asserted by appellants really occurred. It is settled law in California that the giving or refusing to give such an instruction does not constitute prejudicial error unless injury is shown. (*People* v. *Russell,* 19 Cal. App. 750, [127 Pac. 829]; *Medlin* v. *Spazier,* 23 Cal. App. 242–245, [137 Pac. 1078]; *Poor* v. *W. P. Fuller & Co.,* 30 Cal. App. 650, [159 Pac. 233].) In view of the fact that the testimony regarding the capacity or incapacity of the aged and bedridden testator was, for the most part, that of intimate acquaintances and relatives who radically differed upon the all-important question, and in view of the testimony of the nurse who attended him in his last illness (quotations

from which we have made above), we think that the appellants were injured by the failure to give the instruction.

A serious error was committed by the court in giving the following instruction: "The law requires that the person upon whom the burden of proving the insanity of a testator rests—in this case the contestant—shall prove it by a preponderance of evidence. By a preponderance of evidence is meant that amount of evidence which produces conviction in an unprejudiced mind, and only such evidence will justify a verdict that Isaac J. Ross was of unsound mind at the time he executed this instrument." That the giving of a substantially identical instruction upon a similar issue was error, this court held in *People* v. *Miller,* 171 Cal. 649, [154 Pac. 468]. That, to be sure, was a criminal case, but the reasoning applies to the case at bar, because, in effect, the jurors were told that they must uphold the probate of the will unless the ground of contest should be established to their satisfaction beyond a reasonable doubt. (See, also, *Campbell* v. *Bradbury, ante,* p. 364, [176 Pac. 685].) It is argued that contestants themselves adopted the same false definition in the instructions which they proposed. For example, they requested the court to give an instruction to the effect that if the jurors were "*satisfied*" that Isaac J. Ross was not of disposing mind when the will was executed their verdict must be for the contestants. In other instructions offered, contestants used the expressions "*believe* and are satisfied, from and by the evidence" and "*believe* from the preponderance of the evidence." We do not think that these expressions amount to a concurrence in the definition as given. In other words, the rule announced in *Ergo* v. *Merced Falls Gas and Electric Co.,* 161 Cal. 334–340, [41 L. R. A. (N. S.) 79, 119 Pac. 101], does not find proper application under the facts here disclosed. In that case the defendant had proposed and the court had given an instruction very much more injurious to its cause than the one to which it objected.

No other alleged errors require review or analysis.

The judgment is reversed.

Lennon, J., and Wilbur, J., concurred.